TYSON, Judge.
Lamar Gosha, also known as Mark Gosha, was indicted in Coffee County for the robbery of a grocery store in Enterprise. Go-sha pled not guilty to the charge and his petition for treatment as a youthful offender, pursuant to § 15-19-1 et seq., Code of Alabama 1975, was denied by the trial court. At trial Gosha was found guilty as charged by a jury, and sentenced by the court to serve fifty years in the state penitentiary. Section 13-3-110, Code of Alabama 1975. He prosecutes this appeal in forma pauperis, and challenges only the sufficiency of the evidence upon which he was convicted.
Ruth Motley was called as the first witness for the State, and she testified that she was the co-owner with her husband of the Southside Curb Market, a grocery store in Enterprise, and had been present in the store with her daughter, Joanne Hutchinson, on the night of December 20, 1979. She stated that she and Mrs. Hutchinson were seated at one of the cash registers watching television when, around 9:30, a lone black male entered the store and walked around to the store’s drug counter where he paused to pick up a product. He brought the item to the counter where Mrs. Motley and Mrs. Hutchinson were and asked Mrs. Motley to read the label for him and tell him if that was what he was looking for. Mrs. Motley stated that at that point “he was getting closer to me than he should” (R. 10), and that he then slapped the item out of her hand and said, “This is a holdup and I want your money and all of it” (R. 11). As the man was saying this, Mrs. Motley testified, he grabbed her around her neck with one of his arms and held a knife to her throat. Mrs. Motley stated that Mrs. Hutchinson then pulled a gun on the man but “he told her to give him that gun” (R. 11), and “if she didn’t give him the gun that-he would cut my throat” (R. 12). The man then forced Mrs. Motley between him and Mrs. Hutchinson, and demanded only the money and not food stamps; when he had received the money, he released Mrs. Motley and ran out of the front door of the store.
Mrs. Motley further testified that the assailant was black and was wearing a green army field jacket, but that she could not identify him nor had she ever gotten a look at the knife. She stated that he escaped out the door but that she did not know in which direction he had run. She estimated that approximately $120.00 in cash had been taken by the man.
On cross- -examination Mrs. Motley reiterated that she had not been able to get a good look at the man because of the manner in which he had held her. She further stated that the man had been wearing a dark toboggan and a white glove, and “more or less faded” blue jeans.
Joanne Hutchinson, Mrs. Motley’s daughter, testified that she helped her mother at the Southside Curb Market, and was doing so on the night of December 20. She was continuously present in the store from approximately 8:50 until 9:30 that night and was seated with Mrs. Motley at one of the cash register stations. Mrs. Hutchinson tes *565 tified that, around 9:30, a single black male, whom she identified in court as appellant, entered the store and stopped at the drug counter. Mrs. Hutchinson stated that he stood at the counter for a while and then picked up a box of Sine-Off after she asked him if he needed assistance. Upon reaching the cash register and being told the price of the item, the man identified as appellant grabbed Mrs. Motley. Mrs. Hutchinson testified that she then pulled out the loaded pistol that was customarily kept under the cash register and “told him to get away from her” (R. 23). To this appellant replied, “If you make a move, I’ll cut her throat” (R. 24), and, “If you shoot that gun I’ll cut her throat” (R. 25). The witness further stated that, though she could see the blade of the knife held by appellant, she could not see the handle. At this point, Mrs. Hutchinson testified, she removed the cash from the register, as appellant told her to leave the food stamps and checks, and “told him to take it and leave” (R. 25); she estimated the amount of money to be $100.00 in one, five and ten dollar bills.
Mrs. Hutchinson further stated that appellant refused to pick up the money “because I still had the gun” and “was afraid I would shoot him”; appellant told her to give the gun to him and “he would throw it in the store when he left” (R. 26). The witness stated that she refused to do this “because I knew that would be the end of both of us” (R. 27), but she offered to put the gun on the floor. After doing this, the man ran out of the door. Mrs. Hutchinson further testified that the man was wearing a green army field jacket, and that she did not know where he went after leaving the store.
The witness stated on cross-examination that she was unable to identify the type of knife used in the robbery, and that, although she saw appellant wearing the jacket and a toboggan, she would be unable to identify those items. She further testified that she had a good view of appellant’s face and that she had not noticed any unusual or identifying marks. She also stated that he had been wearing a white glove on his left hand. Mrs. Hutchinson further stated that she picked appellant’s picture out of a “mug” book, but that she had not identified him in any type of line-up.
Bruce Devane, an investigator with the district attorney’s office, testified that, on December 27, he had participated in a search of the area adjacent to the Southside Curb Market pursuant to his investigation of the December 20 robbery at the store. The witness identified several photographs as depicting the area in which he searched, and identified one photograph as showing a green army field jacket which he had located in some underbrush about 450 feet from the Southside Curb Market. Mr. Devane further identified the actual jacket as the one he had taken into possession on that day, and stated that it was under his constant control until he submitted it to the Enterprise crime laboratory. The witness stated that, in the pockets of the jacket, he recovered a number of items, including a “pocketknife with a white plastic handle with a four inch blade” (R. 43), and similarly maintained these within his control until their submission to the crime laboratory.
On cross-examination Mr. Devane acknowledged that he had not discovered anything in or on the jacket linking it to appellant. Under further questioning from the prosecutor, the witness stated that he had discovered the jacket in an area of very dense undergrowth along a trail , which led to the cotton mill.
Charles Brooks, a crime laboratory analyst employed in the Enterprise laboratory of the Department of Forensic Sciences, stated that, on December 27, he had received a green army field jacket and a package of items from the pockets of the coat from Mr. Bruce Devane. Mr. Brooks testified that he examined these items for fingerprints, but discovered none suitable for comparison on any of the items. He further stated that he shook the coat for fibers and hairs, and analyzed some hairs retrieved thereby as of negroid origin.
Mr. Brooks acknowledged on cross-examination that, though he had found a partial fingerprint, another fingerprint examiner *566 returned it labeled unusable for comparison purposes. He further acknowledged that he would be unable to link the hairs found on the jacket to any particular person, and that he had not taken samples of appellant’s hair to attempt any sort of comparison.
Willie Fred Baldwin, eighteen years of age, was the final witness for the State, and testified that he knew appellant by the name of Mark Gosha, but had never heard him called Lamar Gosha. The witness stated that he had become acquainted with appellant at the cotton mill where both worked and had been working in December, 1979. Mr. Baldwin further testified that, sometime after 9:00 on the night of December 20, he had occasion to be at the South-side Curb Market, having parked his car in a vacant lot across the street. He stated that, as he ran across the road to the store, he saw a Mary Anderson Flowers, whom he had known “since third grade,” standing out in front of the store. Mr. Baldwin had conversation with Ms. Flowers, re-crossed the road to retrieve a hair “pick” he had dropped, and then returned to where Ms. Flowers was- standing. He stated that he was then going to enter the store when he saw appellant inside the store holding a knife to Mrs. Motley’s neck. Mr. Baldwin identified a State’s exhibit as the knife he had seen appellant holding, in that he had been able to see the white handle as appellant was holding it to Mrs. Motley’s neck. Appellant turned and saw the witness, and then released Mrs. Motley and ran out the door, not saying anything to Mr. Baldwin as he passed him. Mr. Baldwin observed appellant, who was wearing a green fatigue jacket, run down the street toward a railroad underpass.
Mr. Baldwin further testified that Mary Alice McCloud (this subject’s name changes at several points during the testimony, but apparently the same individual is involved) was standing in front of the store when he arrived, and that he had seen this person and appellant walking together toward the Southside Curb Market after 9:00 o’clock on the night of December 20. He stated that, when appellant ran out of the front of the store, this Mary Alice grabbed his (Baldwin’s) arm.
The State thereupon rested, and no motions were made by either party in the interim.
The sole defense' witness was Bertha Smith, who testified that she was employed at the cotton mill and knew appellant very well. She stated that he had a scar or “dark mark” on tjie right side of his face, a hole in his nose where an earring had been placed, and a mustache and beard, and that he had had these characteristics ever since she had known him. She further testified that, on the night of December 20, appellant had entered the cotton mill and had seen her at 9:45; he was wearing khaki pants and a tank top shirt with red, white, and blue stripes. The witness also stated that she had never known appellant to have a green fatigue jacket or a knife, and that he was not excited that night, nor did he have a white glove on either hand. Appellant rode home with Ms. Smith after she got off work at 10:00 o’clock.
On cross-examination, Ms. Smith acknowledged that appellant lived with her, and was doing so on December 20. The witness stated that it would take about three minutes to walk from the Southside Curb Market to the railroad underpass, and about ten minutes to walk from that store to the cotton mill where she worked. Ms. Smith further identified a statement that she had given to the sheriff’s department at some point after the incident, in which she had stated that appellant was at her home when she had returned at 10:05 on December 20. Ms. Smith admitted that she had lied to the sheriff in the statement to protect appellant, but later changed the statement to reflect the truth, i. e., that appellant had met her at the mill at 9:45 that night.
Ms. Smith further testified under questioning by counsel for appellant on re-direct that appellant’s stepfather did live in the vicinity of the cotton mill and that, in her opinion, it would take about fifteen minutes to walk from his house to the mill. *567 She also reiterated that she had lied to the sheriff to protect appellant, but that the truth of the matter was that appellant had come to her at the mill that night around 9:45.
I
Although appellant did not make a motion to exclude State’s evidence at the close of the State’s case-in-chief, nor did he request a directed verdict or the affirmative charge, the issue of the sufficiency of the evidence is presented for our review by virtue of appellant’s motion for new trial, which concerned this point. Hogue v. State, 54 Ala.App. 682, 312 So.2d 86 (1975).
The testimony of Mrs. Motley, Mrs. Hutchinson, and Willie Fred Baldwin certainly established a prima facie case of robbery, and appellant was positively identified as the robber by Mrs. Hutchinson and Mr. Baldwin. The additional evidence adduced by the State was, of course, circumstantial but tended to cast the finger of guilt toward appellant, and was thus entitled to the same weight as positive evidence. Trammell v. State, Ala.Cr.App., 377 So.2d 12 (1979). This combination of direct and circumstantial evidence was more than sufficient to afford the jury the conclusion that appellant had robbed the Southside Curb Market.
There is no error apparent from our scrutiny of the record, and therefore the judgment rendered below is
AFFIRMED.
All the Judges concur.